UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN A. BEDUNAH, JR.,

        Plaintiff,

v.                                            Case No. 1:19-cv-1054

                                            Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his application for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on November 2, 2018, alleging a disability onset date of October 30, 2018.  PageID.31. This is plaintiff's second application.  His earlier claim for benefits was denied by an administrative law judge (ALJ) on October 25, 2018. PageID.124-134.  In the present case, plaintiff identified his disabling conditions as: post-traumatic stress disorder (PTSD) from combat, depression from combat, anxiety from combat, GERD gulf war disease, left and right hip radiculopathy, degenerative disc disease of the lumbar spine, sleep apnea, asthma, and right hip trochanteric pain syndrome. PageID.238.[1]  Prior to applying for DIB, plaintiff completed the 12th grade and had past employment as a carpenter, locksmith, building

---

[1] Plaintiff was in the Army National Guard from 1991 through 2015.  He was medically discharged due to his back and PTSD conditions.  PageID.660.

maintenance repairer, and concrete finisher.   PageID.43, 239.  An ALJ reviewed plaintiff's application de novo and entered a written decision denying benefits on November 5, 2018. PageID.31-46.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.      LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.   42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.      ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 30, 2018, and met the insured status requirements of the Social Security Act through December 31, 2022. PageID.33. At the second step, the ALJ found that plaintiff had severe impairments of degenerative joint disease of the bilateral hips, degenerative disc disease of the spine, obstructive sleep apnea, asthma, obesity, depression, anxiety, and PTSD.  PageID.34.  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *Id*.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he needs a sit/stand option allowing him to change position and work in either a seated or standing position while remaining on task at his job duties. He needs to sit for approximately 20 minutes after standing for approximately 20 minutes. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He can frequently reach, handle, and finger. He can tolerate occasional exposure to extreme cold, extreme heat, high humidity, and pulmonary irritants such as dusts, odors, fumes, gases, and smoke. He can tolerate a moderate noise level. He should not work at unprotected heights and should not operate heavy machinery. He can understand, remember, and carry out detailed tasks commensurate with those involved in work that takes up to six months to learn. He can tolerate occasional interactions with supervisors, coworkers, and the public. He can adapt to occasional changes in the routine work setting.

PageID.37.  The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.43.

At the fifth step the ALJ found that plaintiff could perform a range of light, unskilled occupations in the national economy.  Specifically, the ALJ found that plaintiff could perform the requirements of record clerk (42,000 jobs), office helper (116,000 jobs), and office

clerk (158,000 jobs).  PageID.44.  Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from October 31, 2018 (the alleged onset date) through July 2, 2019 (the date of the decision).  PageID.44-45.

## III.  DISCUSSION

Plaintiff raised four errors.

### A.  The weight given to Dr. Hayes' medical opinion portion is not supported by substantial evidence.

Plaintiff states that ALJ Rosenberg's decision at issue (July 2, 2019) "found the exact same RFC [residual functional capacity] as in her prior 10/25/2018 decision, except that she changed the restriction on interaction with supervisors, coworkers, and the public to occasional as opposed to frequent as it was in the prior decision."  Plaintiff's Brief (ECF No. 9, PageID.1807). Plaintiff contends that this RFC is not supported by substantial evidence in light of new medical evidence submitted after the 2018 decision.  *Id*.  Specifically, plaintiff points to opinion of Brian Hayes, D.O.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  The ALJ determines the RFC "based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R. § 404.1520(e).

Plaintiff contends that the ALJ did not properly weigh Dr. Hayes' opinions in developing the RFC.  For claims filed after March 17, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  Now, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2).[2]  If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not

---

[2]  The regulations explain "supportability" in the following terms: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).

The regulations explain "consistency" in the following terms: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

Here, the ALJ stated that she considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 CFR 404.1520c and that:

> I did not analyze any disability decisions by other governmental agencies, or statements on issues reserved to the Commissioner (including statements that a claimant is disabled or able to work). Under 20 CFR 404.1520b(c) that evidence is not inherently valuable or persuasive. (B2D). I did, however, consider all available evidence underpinning any such determinations and statements.

PageID.37, 43.

The ALJ reviewed plaintiff's relevant medical history in detail. PageID.37-41. The ALJ addressed Dr. Hayes' opinion as follows:

> Brian Hayes, DO (B12F), is with the VA and has been treating the claimant since July 2, 2018. He opined that the claimant has the following limitations: he can walk one block without rest or severe pain; can sit 15 minutes at a time; can stand 15 minutes at a time; can sit and stand/walk each less than two hours in a workday; must shift positions at will and must walk around for five minutes every five minutes (this is inconsistent with the ability to sit or stand 15 minutes at a time); would need unscheduled rest breaks during the day; must use a cane or other assistive device; rarely lift less than 10 pounds; can never twist, stoop, crouch/squat, or climb; can handle 10 percent of the time, finger 20 percent of the time, and never reach; would be off-task 25 percent or more of the time; and would be absent more than four days per month. (B12F). This opinion is not persuasive. The medical evidence of record does not contain objective evidence that supports Dr. Hayes's

7

opinion; no new records since the prior decision that reflect any deterioration in the claimant's physical medically determinable impairments that would cause such a great degree of limitation [sic].

PageID.42.

Contrary to the ALJ's conclusions, plaintiff states that he was diagnosed with a number of conditions after the last decision, including: osteoarthritis and trochanteric pain syndrome of the bilateral hips; abnormal range of motion in his hips which contributed to functional loss; x-rays which revealed minimal degenerative changes involving the hip joints; increased functional impacts due to the hip problems (*e.g.*, standing, walking, lifting, and sitting); and, sleep apnea. Plaintiff's Brief (ECF No. 9, PageID.1808-1809), citing PageID.659, 661, 667-670.

Defendant points out that plaintiff's hip conditions were not new, that he was diagnosed with trochanteric pain syndrome in 2011 and mild osteoarthritis of the hip in 2017. Defendant's Brief (ECF No. 10, PageID.1830), citing PageID.659. In this regard, the ALJ addressed these claims:

I note that the claimant's representative argued that new evidence supports a new RFC finding due to a recent diagnosis of osteoarthritis and trochanteric pain syndrome of the bilateral hips. (B9E/2). However, this was not new evidence, but an assessment from October 2017 that was considered in the prior decision as degenerative joint disease of the bilateral hips. (B1A/7).

PageID.41.

With respect to sleep apnea, the ALJ found that this was a severe impairment which did not meet a listed impairment. PageID.34-35.[3] The ALJ considered plaintiff's most recent problems, which involved the operation of his CPAP machine:

---

[3] The ALJ stated: "There is also no longer a listing for sleep-related breathing disorders. Per 3.00P, we evaluate the complications of sleep-related breathing disorders under the listings in the affected body system. For example, we evaluate chronic pulmonary hypertension due to any cause under 3.09; chronic heart failure under 4.02; and disturbances in mood, cognition, and behavior under 12.02 or another appropriate mental disorders listing. I

In January 2019, the claimant was having issues with his CPAP machine. It kept shutting off and he was unable to sleep. (B11F/27). He received a new machine in early February 2019. (B11F/25). Later that month, he reported the new machine was helping more. (B11F/23).

PageID.38.

Based on this record, the Court concludes that the ALJ adequately articulated reasons for finding that Dr. Hayes' opinion was not persuasive.  Accordingly, plaintiff's claim of error is denied.

###    B.    The ALJ's finding that the plaintiff did not require the use of a cane is not supported by substantial evidence.

Plaintiff contends that the ALJ failed to explain her rejection of plaintiff's testimony that he needs to use a cane.  The ALJ addressed this claim as follows:

During the hearing, the claimant testified that since his last hearing he now has a cane that he reported that he uses all the time for balance and walking. He thinks he started using it in January 2019. He reported he started using it because his left leg was going out on him due to sciatica. Since his last hearing, he still needs to move around and get up and stretch. He is off and on, up and down.

PageID.37.

On March 21, 2019, the claimant presented to his doctor with complaints of back pain. He reported that the day before he had gotten up to use the restroom and lifted his foot to look at it, and felt his lower back pop. He could hardly walk per the claimant. (B13F/1). He was ambulating with a cane, but had a steady gait. His lumbar back exhibited tenderness and pain, but had no swelling or spasm. He had a normal mood and affect. (B13F/2). His doctor recommended ice/heat and prescribed him gabapentin. (B13F/3).

PageID.39.

After considering the record, the ALJ determined that plaintiff did not require use of a cane for at least 12 months:

The claimant also testified to having to use a cane all the time for balance and walking.  (Cl. testimony). However, an exam in March 2019, the claimant was

considered the listings associated with sleep-related breathing disorders and find the claimant does not meet these listings." PageID.35.

using a cane with a steady gait.  He had injured his back the day before when looking at his foot, but the only treatment provided was ice/heat and gabapentin. (B13F/2). There is no evidence that he required further treatment such as imaging, physical therapy, injections, surgery, or even to see a specialist, which is not consistent with an impairment that prevents you from walking. There is no indication that he would need to use a cane consistently for at least 12 months.

PageID.41.

Significantly, the record reflects no visits at Family Care Specialists after the October 2018 decision until March 21, 2019, at which point the claimant was using a cane because he back had "popped" the day before (B13F/2). We only have the notes from this one visit without evidence of any subsequent treatment, and no indication that he would need to use a cane consistently for at least 12 months.

PageID.42.

Based on this record, the ALJ articulated her reasons for concluding that plaintiff did not have a disabling condition which required him to use a cane to ambulate for a continuous period of twelve months.  *See* 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").  The ALJ's function is to resolve conflicts in the evidence. *See Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987). That is what the ALJ did in this case in evaluating plaintiff's use of a cane. Accordingly, plaintiff's claim of error is denied.

C.    **The ALJ's finding that the plaintiff's daily activities do not justify a finding of disability or a more restrictive RFC is not supported by substantial evidence.**

Plaintiff contends that the ALJ made several assumptions and findings not supported by the evidence.   Specifically, the ALJ's reference to plaintiff driving to Florida and working around the house.  The ALJ addressed plaintiff's daily activities as follows:

10

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because they are not fully supported by the medical evidence of record. The claimant met with psychiatry on July 2, 2018. (B5F/11). He reported that he was all right. The claimant noted he had been down to Chattanooga and Clearwater, Florida, and drove back 17 hours.

PageID.38.

There are inconsistencies between the claimant's statements and the rest of the medical evidence that show that the individual has alleged restrictive abilities that are not supported by the record. Despite the allegations of symptoms and limitations preventing all work, the record reflects that the claimant went on a vacation shortly before his alleged onset date that required driving 17 hours away. (B5F/12). Although a vacation and a disability are not necessarily mutually exclusive, the claimant's decision to go on a vacation tends to suggest that the alleged symptoms and limitations may have been overstated, such as how long he is able to sit. He testified that he could lift no more than 10 pounds. (Cl. testimony). However, this is not consistent with normal strength and muscle tone and minimal diminished range of motion in his lumbar spine. (B2F, B13F). Right after his alleged onset date in November 2018, the claimant reported he was moving stuff around and putting up a Christmas tree. (B6F/9). In February 2019, he reported moving stuff out of a room that had water leaking into it due to a broken pipe. (B11F/23). Both of these activities likely required lifting more than 10 pounds.

PageID.40.[4]  In addition, the ALJ noted inconsistencies in the record.  *See* PageID.36 ("Though the claimant reported his wife mostly drives due to his PTSD (B3E/4), he reported to his therapist that his wife has never gotten her driver's license. (B11F/17).").

Viewing the record as a whole, the ALJ considered the inconsistency between plaintiff's alleged limitations and his ability to perform various daily activities as one factor in the overall analysis of his subjective complaints.  *See* 20 C.F.R. § 404.1529 ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities . . .").   In short, the ALJ did not make unsupported assumptions and findings with respect to plaintiff's daily activities.  Accordingly, plaintiff's claim of error is denied.

---

[4] The Court notes that plaintiff speculates as to what might have occurred during the road trips ("there is no indication that the Claimant himself drove the entire time, or that there were no stops or breaks along the way, or that the Claimant was merely a passenger lying down in the vehicle so as to accommodate his pain").  Plaintiff's Brief at PageID.1811. This academic speculation is unpersuasive; plaintiff knows what occurred.

**D.      The weight given to Dr. Elaine Tripi's psychosocial assessment and opinion is not supported by substantial evidence and is not consistent with the regulations.**

Plaintiff contests the ALJ's conclusion that Dr. Tripi's October 12, 2015 opinion is too remote and "stale" to be considered in his present application for benefits.  Plaintiff's Brief at PageID.1813.  In his brief filed before the administrative hearing, plaintiff's counsel addressed Dr. Tripi's opinion:

> On 10/12/2015, the claimant had a psychosocial assessment performed by Dr. Elaine Tripi. It did not appear that this psychosocial assessment was part of the prior file. This assessment noted difficulties with falling asleep and staying asleep. It was also noted that the claimant would experience flash backs causing intrusive thoughts and there was difficulty with trusting others with the claimant having few friends. (8F, Pg. 2) He also noted frequent bouts of irritability and outbursts of anger and that his concentration was impaired with his mind wandering easily, resulting in many unfinished projects. It was noted that Mr. Bedunah was also hyper vigilant and prefered [sic] his back to the wall, often scanning his environment. The doctor noted an exaggerated startle response. The doctor diagnosed the claimant with post-traumatic stress disorder, indicating it was chronic, delayed, and severe. The doctor also noted degenerative disc disease of the lower back and difficulty with figures of authority. (8F, Pg.3) It was noted that the claimant desperately was trying to stay on the job at that time and that he was working by himself as much as possible, but had deficiencies in concentration and motivation along with high anxiety, irritability, and significant depression. Dr. Tripi also completed a Disability Questionnaire noting a GAF score of 49. (8F, Pg.5)

PageID.288.

It appears that Dr. Tripi prepared this report for the VA.  PageID.1558-1569.   In evaluating new evidence, the ALJ addressed Dr. Tripi's opinion as follows:

> [Claimant's representative] also argues a psychosocial assessment from October 2015 was not considered in the prior decision. (B9E/3). The claimant's prior alleged onset date was October 5, 2017. Evidence produced containing medical evidence or medical opinions that are older than 12 months prior to the alleged onset date are considered stale and too remote in time to be relevant in determining the severity of the claimant's impairment at the alleged onset date. (HALLEX 1-2-6-58).

PageID.42.[5]

---

[5] HALLEX refers to the Hearings, Appeals and Litigation Law manual.

Under the regulations, the SSA develops a claimant's medical history:

Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.

20 C.F.R. § 404.1512(b)(1).  Here, Dr. Tripi's opinion addressed plaintiff's condition in October 15, 2015.  Although the doctor's opinion pre-dates plaintiff's alleged onset date of October 30, 2018, by more than three years, the ALJ cites no regulation to support her conclusion that the opinion is "too remote in time to be relevant in determining the severity of the claimant's impairment at the alleged onset date." At least one Court has determined that there is not a 12 month-rule for consideration of medical opinions. *See Douglas v. US Social Security Administration*, No. 15-CV-378-PB, 2016 WL 5660315 at *3 (D.N.H. Sept. 30, 2016) (in rejecting plaintiff's objection that the ALJ considered a doctor's opinion issued about 1½ years before plaintiff's amended onset date, the court reasoned that "[b]ecause HALLEX 1-2-6-58(A) does not bar the ALJ from considering Dr. Jaffe's opinion, the ALJ did not err in relying on the opinion even though it predated Douglas's alleged onset date by more than a year").

Defendant's brief submits a new reason for rejecting Dr. Tripi's assessment, arguing that it was not a medical opinion.[6]  The Court does not accept this *post hoc* rationale, which was not articulated by the ALJ.[7]  Here, the ALJ relied on HALLEX as barring consideration

---

*See* https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html.

[6]  "Because the assessment was too remote in time to be relevant, it did not relate to Plaintiff's claim, and thus was not 'evidence' as defined by the regulations. *See* 20 C.F.R. § 404.1513 ("What we mean by evidence. . . . evidence is anything you or anyone else submits to us or that we obtain that *relates to your claim*."). (Emphasis added). Because it was not 'evidence,' it could not be considered a 'medical opinion,' one of the five defined categories of evidence. *See* 20 C.F.R. § 404.1513(a)(2)."  Defendant's Brief at PageID.1836.

[7] *See National Labor Relations Board v. Yeshiva University*, 444 U.S. 672, 685, fn. 22 (1980) ("We do not, of course, substitute counsel's *post hoc* rationale for the reasoning supplied by the Board itself.").

of Dr. Tripi's opinion without identifying any regulation, policy guideline, or specific language in HALLEX which states that any medical opinion which predates the claimant's disability onset date by 12 months is irrelevant because it is too remote or stale.  While the HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings.  *See Bowie v. Commissioner of Social Security*, 539 F.3d 395, 399 (6th Cir.2008) (observing that the procedural guidance in HALLEX is "not binding on this court").  Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate Dr. Tripi's opinion.

## IV.    CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to re-evaluate Dr. Tripi's opinion.   A judgment consistent with this opinion will be issued forthwith.

Dated:  March 19, 2021                                         /s/ Ray Kent
                                                              RAY KENT
                                                              United States Magistrate Judge